Mitsubishi International Corp., plaintiff *v.* United States, defendant; Volume Footwear Retailers of America and Footwear Division of the Rubber Manufacturers Association, Inc., amici curiae

Court No. 82–4–00491

*Sharretts, Paley, Carter, & Blauvelt (Peter J. Baskin* on the brief) for plaintiffs.

*Richard K. Willard,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office (*Jerry Wiskin* on the brief) for defendant.

*Mandel & Grunfeld* (*Steven P. Florsheim* and *Robert B. Silverman* on the brief) for Volume Footwear Retailers of America, Amicus Curiae.

*Lamb & Lerch* (*Richard J. Kaplan* on the brief) for Footwear Division of the Rubber Manufacturers Association, Inc., Amicus Curiae.

Rao, *Judge:* This civil action is before the Court on submission pursuant to a Stipulation Upon Agreed Statement of Facts In Lieu Of Trial. It involves the proper classification of certain women's footwear, commonly known as "joggers," which are composed of leather, plastic and rubber.

The merchandise is concededly in chief value of leather, if the value of the leather, plastics and rubber are considered separately. However, if the values of the rubber and plastics are combined, the value of these components would exceed the value of the leather component.

The "joggers" were classified by the United States Customs Service (Customs) under then item 700.85 (now item 700.95) of the Tariff Schedules of the United States (TSUS) as "Other footwear * * * Other * * * Other" and assessed with duty at 12.5 per cent ad valorem. It is plaintiff's position that the merchandise is properly classifiable as "Footwear, of leather * * * Other * * * for other persons * * * Other * * * Valued at over $2.50 per pair," under item 700.45, TSUS, at the rate of 10 per cent ad valorem.

The question before the court is whether the "joggers" can be considered to be "of leather" for tariff classification purposes. The operative provision of the TSUS is General Headnote 9(f) of the TSUS which provides as follows:

> 9. *Definition.* For the purposes of the schedules unless the context otherwise requires—
>
> \*    \*    \*    \*    \*    \*    \*
>
> (f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e.g., "furniture *of* wood", "woven fabrics, *wholly of* cotton," etc., have the following meanings:
>
> > (1) "of" means that the article is wholly or in chief value of the named material.

The term "in chief value" is defined in general Interpretive Rule 10, TSUS:

10. *General Interpretive Rules.* For the purposes of these schedule—

 \*     \*     \*     \*     \*     \*     \*

(f) an article is in chief value of a material if such material exceeds in value each other single component material of the article;

While not disputing the relevance of these definitions and rules, defendant urges the Court to apply Headnote 1 of Schedule 7, Part 12 of the TSUS, which provides:

*Schedule 7, Part 12:*

Headnote 1. For the purposes of the tariff schedules—

 \*     \*     \*     \*     \*     \*     \*

(c) the term "rubber or plastics" means rubber, plastics, or combinations of rubber and plastics.

It is defendant's position that this headnote clearly applies to the entire TSUS, the the rubber and plastics components must be considered together in determining the chief value of the merchandise and, therefore, the merchandise is not in chief value of leather, but of "rubber or plastics."

Defendant also relies on the *Explanatory Notes to the Tariff Classification Study, 1960 (TCS), which explains why this headnote was incorporated into the TSUS:*

The provisions for these materials in schedule 4 are confined to basic crude forms. Headnote 1 to part 12 of the schedule defines the term "plastics" more broadly so as to include certain natural substances as well as synthetic substances provided for in the chemical schedule \* \* \* The definition in headnote 1 of this part of the terms "rubber", "plastics", and "rubber or plastics" are concerned with their meaning as used in tariff provisions covering products made therefrom.

As mentioned earlier in these explanatory notes, it is often difficult to distinguish synthetic rubber from other plastic materials. Therefore, the term "rubber or plastics" has been adopted not only as a convenience for use in formulating tariff descriptions but also to eliminate the necessity for distinguishing between these materials \* \* \*

It is the opinion of the Court that this explanation from the TCS does not support defendant's position, and, instead, leads to the conclusion that the "joggers" are indeed of leather. The meaning of the term, "rubber or plastics" is, according to the TCS, concerned with tariff provisions in which it is used, and the purpose of the definition was to alleviate the difficulty in distinguishing *synthetic* rubber from other plastic materials, and subsequently, to eliminate the necessity for distinguishing between *them,* i.e., the synthetic rubber and other plastic materials. Not only does this language explain

why rubber and plastics were combined as one term when used in the TSUS, it also demonstrates why the term has no applicability in the instant action.

The parties have stipulated that the component materials of the merchandise in question are leather, rubber and plastic, *supra.* There is no synthetic rubber present and there is no reason to combine the rubber and plastic components since there was no difficulty in distinguishing the rubber component from the plastics component. Separate values were found for each and there is no need to treat them as a single component.

The Court was enlightened but not persuaded by the excellent brief of *amicus curiae,* Footwear Division of the Rubber Manufacturers Association (FDRMA). It detailed with clarity the tariff treatment accorded to footwear under the TSUS and the Tariff Act of 1930. It explained the difficulty which arose with the advent of synthetic rubber and states that "synthetic rubber are (sic) essentially plastics * * *'" which grew to be used by the rubber industry as rubber. FDRMA brief at 7. However, the Court cannot conclude that Congress intended that "rubber or plastics" must be combined for all considerations even when the term does not appear in the provision or item under consideration.

Volume Footwear Retailers of America (VFRA) has also provided the Court with an *amicus* brief in support of the plaintiff's position. Without reiterating each supporting argument made therein, we find it cogent and agree that the Congressional intent to treat "rubber and plastics" as a unitary combination throughout the TSUS is limited to those provisions where the term appears in the description of the merchandise being classified, and that Congressional intent to extend this definition to all other provisions of the TSUS is lacking.

The Court has reviewed the cases cited by the parties and *amici. InterPacific Corp.* v. *United States,* 8 CIT 132, Slip Op. 8497, involved the question of whether embroidery found on the exterior surface of a shoe upper was part of the upper. This case did not involve issues of material component in chief value and only involved the composition of the exterior surface are of the upper and we do not find it dispositive or persuasive in determining the issue involved in the instant action.

*Miodrag Nikolic* v. *United States,* 5 CIT 137, Slip Op. 8326 (1983), involved the denial of a customhouse broker's license on the basis of an erroneous answer to a question in the examination as to the classification of handbags that contained leather, cotton, nylon, and acrylic. Plaintiff had answered that the handbag would have been of leather (45%), but the correct answer was that the handbag was of textile materials (55%). The correct answer depended on a knowledge of the items of the TSUS having to do with the classification of handbags, including a provision for handbags of textile materials. No similar comparison exists in the instant case.

In conclusion, the Court has reviewed the stipulation, the pertinent statutes, tariff provisions and legislative history to the Tariff Schedules of the United States, the briefs of the parties and *amici* and all other relevant data and finds that the "joggers," the merchandise in question, are composed of leather, with leather being the component in chief value as compared to the value of the rubber and plastic components individually, and judgment is granted to the plaintiff.

Let judgment issue accordingly.